tinguish this case from that of Nolan v. Railroad Co., 87 N. Y. 63, 41 Am. Rep. 345, except in points which are not favorable to the defendant in the present action; and the cases having been submitted to the jury upon a conflict of evidence, and the trial court, with the parties before it, having refused to grant a new trial, we are not disposed to interfere.

We find no reversible error in the admission of evidence upon cross-examination, and the verdict for $7,000 is not so far excessive as to warrant the conclusion that the jury was actuated by improper motives in reaching its conclusion.

Judgment and order modified by deducting therefrom the costs and disbursements of the first trial, which should have been imposed on setting aside the first verdict on plaintiff's motion, and as thus modified affirmed, without costs. All concur, except JENKS, J., who· dissents.

---

(69 App. Div. 566.)

### GRAFING v. IRVING SAV. INST.

(Supreme Court, Appellate Division, Second Department. March 14, 1902.)

BANKING—DEPOSITS—PAYMENT.

> Where a deposit in a savings bank was made by D. out of his own funds, but in the name of "D. or G.," the savings bank was protected, on payment of the funds to D.'s executrix on presentation by her of the pass book and testamentary letters, where G. had never made any claim to the deposit up to that time, and had never deposited or withdrawn any money, and had never had the pass book; and D.'s intention in making the deposit in the form recited was immaterial.

Appeal from trial term, Kings county.

Action by George Grafing against the Irving Savings Institution to recover a deposit. Judgment for defendant (74 N. Y. Supp. 741), and plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Edward W. S. Johnston, for appellant.
Robert C. Beatty, for respondent.

HIRSCHBERG, J. In affirming this judgment we adopt the opinion of Mr. Justice Betts at the trial term (74 N. Y. Supp. 741). It is immaterial what may have been the intention of Diedrich Grafing in making the deposit in the form in which he did as between the parties to this action, now that the money has been paid over in good faith, and without notice of the plaintiff's claim. None of the money belonged to the plaintiff. He deposited none of it, and it does not appear that he ever knew of the deposit until after the bank had closed the account by repayment to his brother's executrix. The bank was justified in making the payment by its rules, by the possession and production of the pass book, and by the fact that the form of the deposit was in favor of either severally. The case is distinguished from Mulcahey v. Bank, 89 N. Y. 435, largely relied on by the plaintiff. It is not the case therein suggested (page 438) "of a joint deposit of a joint fund belonging to the two depositors," in

which event, the court said, "it would seem to follow that the legal title to the deposit vested on the death of O'Keefe in the plaintiff, and that the liability of the bank at law was not discharged by payment to his administrator." On the contrary, the fund here was not a joint fund. It belonged altogether to the depositor, Diedrich, and in making the deposit in his name or in that of his brother the plaintiff, whatever may have been his intention as to the conferring of a beneficial interest in the fund upon his brother, and whatever the nature and extent of that interest, if any, he adopted a form of deposit which, on its face, and under the rules of the institution, invited and justified payment to either upon production of the pass book, and in the absence of notice of a hostile claim from the other. The language of the court in the Mulcahey Case, 89 N. Y. 439, is therefore applicable:

"The right of the bank thus to pay, and of each depositor to demand payment, was not, we think, terminated by the death of O'Keefe. The authority O'Keefe had was coupled with an interest, and vested on his death in his personal representative. The bank agreed, in substance, to pay to either depositor on the production of the pass book. The several character of its obligation was not transformed, by the death of O'Keefe, into an obligation to pay to the survivor alone. But when the bank had notice that the fund belonged to the plaintiff, and was prohibited by her from paying it to the representatives of O'Keefe, it could not thereafter justify a payment to the latter under the original authority, or by reason of the rule in the pass book, if the money of right, as between the plaintiff and the estate of O'Keefe, belonged to the former."

I find no authoritative decision in conflict with this reasoning. On the contrary, it would seem that what was said in Re Bolin, 136 N. Y. 177, 179, 32 N. E. 626, would fully justify the bank in assuming that it would be entirely safe to pay the personal representative of the deceased depositor, in the absence of notice, viz.:

"That the moneys were deposited to the account of 'Julia Cody or daughter, Bridget Bolin,' is not a fact from which any inference of a transfer or of a gift arises. In the absence of other evidence, the transaction simply evidenced a purpose of the depositor of the moneys that they should be drawn out by either of the persons named. The only presumption would be that the depositor so arranged for the purposes of convenience," etc.

The judgment should be affirmed.

Judgment affirmed, with costs. All concur.

---

(70 App. Div. 336.)

### RICE v. EUREKA PAPER CO.

(Supreme Court, Appellate Division, Fourth Department. March 11, 1902.)

MASTER AND SERVANT—INJURIES TO SERVANT — DANGEROUS MACHINERY—MASTER'S PROMISE TO REPAIR—ASSUMPTION OF RISK.

Plaintiff, a servant of defendant, was injured while operating a defective rag-cutter. He knew of the defect, and appreciated the danger incident thereto. Before the injury he called defendant's attention to the defect in the machine, and declared his purpose to quit work because of it. Defendant, for the purpose of inducing him to remain in the employment, promised to remedy the defect within a specified time.